CASE NO. 25-20476

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

ZOE MILAN BARINAGA,
Plaintiff-Appellant

v.

EXXONMOBIL CORPORATION,
Defendant-Appellee

On Appeal from the
United States District Court for the Southern District of Texas
District Court No. 4:22-CV-3462
Honorable Drew B. Tipton, Presiding

# BRIEF OF APPELLANT ZOE MILAN BARINAGA

Jakki A. Hansen
Texas Bar No. 24000886
THE HANSEN LAW FIRM, P.C.
10190 Katy Freeway, Suite 440
Houston, Texas 77043
Telephone: (281) 888-4364
Email: *jhansen@hansenlawfirmpc.com*

ATTORNEY FOR APPELLANT
ZOE MILAN BARINAGA

## CERTIFICATE OF INTERESTED PERSONS

*Zoe Barinaga v. ExxonMobil Corporation*
*No. 23-20476*

The undersigned counsel of record certifies that the following listed persons and entities have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

A. Parties

| | |
|---|---|
| Plaintiff-Appellant | Zoe Barinaga |
| Defendant-Appellee | ExxonMobil Corporation |

B. Attorneys

| | |
|---|---|
| For Appellant | Jakki A. Hansen<br>Texas Bar No. 24000886<br>THE HANSEN LAW FIRM, P.C.<br>10190 Katy Freeway, Ste 440<br>Houston, Texas 77043<br>(281) 888-4364 - Telephone |
| For Appellee | Reagan Brown<br>Shauna Johnson Clarke<br>Heather Lynn Sherrod<br>NORTON ROSE FULBRIGHT US LLP<br>1550 Lamar, Ste 2000<br>Houston, Texas 77010<br>(713) 651-5151 - Telephone<br>(713) 650-0405 - Facsimile |

## STATEMENT REGARDING ORAL ARGUMENT

Zoe Barinaga respectfully requests that oral argument be granted in this case. The case is fact-intensive and involves different conclusions drawn from the same information and documents. Further, the appeal raises issues regarding the appropriate weight and deference to be afforded certain summary judgment evidence. Appellant requests oral argument to allow for a full exploration of the many relevant facts and legal arguments relating to this important legal issue.

# TABLE OF CONTENTS

Certificate Of Interested Persons .......... II

Statement Regarding Oral Argument .......... III

Table Of Contents .......... IV

Table Of Authorities .......... VII

Statement Of Jurisdiction .......... 1

Issues Presented For Review .......... 2

Statement Of The Case .......... 3

I. Nature Of The Case And Course Of Proceedings .......... 3

II. Barinaga's Claims On Appeal .......... 3

III. Relevant Facts .......... 4

A. Zoe Barinaga and her history at ExxonMobil .......... 4

B. Barinaga's 2018 Human Resources Complaint .......... 10

C. Barinaga's Work as Baytown Chemical Plant Process Manager .......... 13

D. Barinaga is denied the Baytown Chemical Plant site manager position in 2020 .......... 14

E. Barinaga makes a complaint to Human Resources about retaliation and discrimination in November 2020. .......... 17

F. Barinaga receives no promotion in 2020. .......... 18

G. Barinaga files a charge with the EEOC in 2021. .......... 19

H. Barinaga receives no promotion in 2021. .......... 20

I. Barinaga files suit. .......... 20

J. Barinaga receives no promotion in 2022. ....................20

K. Barinaga is denied the Baytown Chemical Plant site manager position in 2023....................23

L. Barinaga files a second charge with the EEOC in 2023. ....................33

M. Barinaga finally gets a promotion....................33

N. Barinaga's Compensation....................34

Summary of the Argument....................35

Arguments And Authority....................36

ISSUE 1....................36

The district court erred when it granted summary judgment in favor of ExxonMobil because Barinaga presented evidence sufficient to establish a prima facie case for her retaliation claims and to demonstrate that ExxonMobil's purported non-retaliatory reasons for its actions were pretextual. ....................

A. Standard of Review....................36

B. Summary of Relevant District Court Findings....................37

C. Barinaga's prima facie case of retaliation. ....................39

i. Elements of the prima facie case. ....................39

ii. Evidence of a causal link between Barinaga's protected activity and the 2020 Baytown Chemical Plant site manager denial....................43

iii. Evidence of a causal link between Barinaga's protected activity and the 2020-2022 promotion denials....................45

iv. Evidence of a causal link between Barinaga's protected activity and the 2023 Baytown Chemical Plant Site Manager denial....................47

D. ExxonMobil's claimed non-retaliatory reasons are pretext....................48

i. ExxonMobil's purported reasons for the 2020 Baytown Chemical Plant site manager denial are pretext. ................................................49
ii. ExxonMobil's purported reasons for denying Baringa the 2023 Baytown Chemical Plant site manager position are pretext. ..............52

(1) ExxonMobil's did not move Barinaga to Major Growth Venture for Barinaga's benefit. ................................................................52

(2) Barinaga was fully qualified for the Baytown Chemical Plant site manager position. ....................................................................54

(3) ExxonMobil did not move Barinaga due to a shortage of openings in Manufacturing. ......................................................................55

(4) ExxonMobil knew of the Baytown Chemical Plant site manager position's probable vacancy when it was finding a place for Barinaga. ..........................................................................................56

C. Pretext Regarding the 2020 - 2022 Promotion Denials. ............................57

i. Barinaga was not "ahead of pace" because there was no "pace." .......57

ii. ExxonMobil's claim that the time between Barinaga's between promotions was not unusual is false. .................................................58

ISSUE NO. 2 .......................................................................................................59

The district court erred in determining that Barinaga's claims of retaliatory denial of promotion before November 5, 2022, were untimely.

Conclusion .........................................................................................................62

Certificate of Service .........................................................................................63

Certificate of Compliance ..................................................................................64

# TABLE OF AUTHORITIES

## CASES

*Ayodeji Awe v. Harris Health Sys*.,
2026 U.S. App. LEXIS 733 (5th Cir. Jan. 12, 2026). .............................. 42, 47

*Briceno-Belmontes v. Coastal Bend College*,
2022 U.S. Dist. LEXIS 5499 (S.D. Tex. 2022) .............................................60

*Brown v. Wal-Mart Stores East, L*.P.,
969 F.3d 571 (5th Cir. 2020)..........................................................................49

*Burlington N. & Santa Fe Ry. Co.,*
548 U.S. 53 (2006) ........................................................................................39

*Cabral v. Brennan*,
853 F.3d 763 (5th Cir. 2017)..........................................................................39

*Cannon v. Jacobs Field Servs. N. Am*., *Inc.,*
813 F.3d 586 (5th Cir. 2016)................................................................... 40, 48

*Celotex Corp.v. Catrett*,
477 U.S. 317 (1986) ......................................................................................36

*Coleman v. BP Expl. & Prod., Inc*.,
19 F.4th 720 (5th Cir. 2021)............................................................................47

*Gupta v. East Texas State University,*
654 F.2d 411 (5th Cir. 1981)................................................................... 60, 62

*Jenkins v. City of San Antonio Fire Dep't*,
784 F.3d 263 (5th Cir. 2015)). ......................................................................39

*Jennings v. Towers Watson,*
11 F.4th 335 (5th Cir. 2021)............................................................................60

*Lamar Adver. Co., v. Cas. Co*.,
396 F.3d 654, 659 (5th Cir. 2005)..................................................................37

*Manning v. Chevron Chem. Co.*,
332 F.3d 874 (5th Cir. 2003) .......................................................................61

*Moore v. Willis ISD*,
233 F.3d 871 (5th Cir. 2000) .......................................................................37

*Nall v. BNSF Ry. Co*.,
917 F.3d 335 (5th Cir. 2019).......................................................................40

*Nasti v. Ciba Specialty Chemicals Corp*.,
492 F.3d 589 (5th Cir. 2007).......................................................................49

*Nola Spice Designs, LLC v. Haydel Enters., Inc*.,
783 F.3d 527 (5th Cir. 2015) .......................................................................37

*Pacheco v. Mineta*,
448 F.3d 783 (5th Cir. 2006).......................................................................60

*Phillips v. Enter. Prods. Co.*
2026 U.S. App. LEXIS 674 (5th Cir. January 9, 2026). ................................44

*Porter v. Houma Terrebonne Hous. Auth. Bd. Of Comm'rs*,
810 F.3d 940 (5th Cir. 2005) ...................................................................42

*Robinson v. Shell Oil Co.*,
519 U.S. 337 (1997). ....................................................................................39

*Sandstad v. CB Richard Ellis, Inc*.,
309 F.3d 893 (5th Cir. 2002).......................................................................40

*Shackelford v. Deloitte & Touche, LLP*,
190 F.3d 398 (5th Cir. 1999) ................................................................ 39, 41, 39

*Sossamon v. Lone Star State of Texas*,
560 F.3d 316 (5th Cir. 2009) .......................................................................37

*Stroy v. Gibson ex rel. Dep't of Veteran Affs*.,
896 F.3d 693 (5th Cir. 2018) .......................................................................62

*Swanson v. General Services Admin*.,
110 F.3d 1180 (5th Cir. 1997).....................................................................49

*Viacom International Inc., v. IJR Capital Investments, L.L.C.*,
891 F.3d 178 (5th Cir. 2018) .......... 37

*Wright v. West*,
505 U.S. 277 (1992). .......... 49

**STATUTES**

26 U.S.C. § 704 .......... 41

28 U.S.C. §1291 .......... 1

28 U.S.C. §1331 .......... 1

28 U.S.C. §1367 .......... 1

29 C.F.R. §1601.12(b) .......... 60

42 U.S.C. §1981 .......... 1, 2

42 U.S.C. §2000e .......... 1, 3, 44, 62

Texas Labor Code §21.001 .......... 1, 13

**RULES**

Fed. R. App. P. 32(a)(6) .......... 64

Fed. R. App. P. 32(a)(7)(B) .......... 64

FED. R. CIV. P.56(C). .......... 36

## STATEMENT OF JURISDICTION

This appeal arises from a private action originally brought by Appellant Zoe Barinaga in Texas state district court under two federal statutes, Title VII of the Civil Rights Act of 1964, as codified in 42 U.S.C. §2000e*, et. seq*., and 42 U.S.C. §1981, and a Texas statute, Texas Labor Code §21.001, *et seq* ("Texas Commission on Human Rights Act" or "TCHRA").[1] Appellee ExxonMobil removed the case to federal court in the Southern District of Texas, Houston Division invoking the district court's jurisdiction under 28 U.S.C. §1331 and 28 U.S.C. §1367.[2] The district court granted summary judgment in favor of ExxonMobil on all claims on September 30, 2025, creating a final judgment.[3] Barinaga timely filed a notice of appeal on October 23, 2025.[4] This Court has jurisdiction over this appeal under 28 U.S.C. §1291 because this is an appeal from a final judgment.

[1] ROA.36.
[2] ROA.11-13.
[3] ROA.876, 920.
[4] ROA.876.

## ISSUES PRESENTED FOR REVIEW

1. The district court erred when it granted summary judgment in favor of ExxonMobil because Barinaga presented evidence sufficient to establish a prima facie case for her retaliation claims and to demonstrate that ExxonMobil's purported non-retaliatory reasons for its actions were pretextual.

2. The district court erred when it held that Barinaga's claims of retaliatory denial of promotion before November 5, 2022, were untimely.

## STATEMENT OF THE CASE

### I. Nature of the Case and Course of Proceedings

Plaintiff Zoe Barinaga filed a complaint alleging gender discrimination, race and national origin discrimination, and retaliation in Harris County, Texas state district court on August 22, 2022.[5] The case was assigned of the 165th District Court in Harris County, Texas.[6] Defendant ExxonMobil removed the case to federal court in the Southern District of Texas, Houston Division, on October 7, 2022.[7]

On June 14, 2024, ExxonMobil filed a motion for summary judgment on each of Barinaga's claims.[8] The court issued a memorandum opinion granting ExxonMobil's motion for summary judgment and issued final judgment dismissing all of Barinaga's claims on September 30, 2025. [9]

### II. Barinaga's Claims on Appeal

Barinaga originally filed claims of gender discrimination, national origin discrimination, and retaliation under Title VII, 42 §2000e, 42 U.S.C. §1981, and Texas Labor Code Ch. 21, TCHRA. [10] While Barinaga maintains the merits of her claims of gender and national origin discrimination, for the purposes of narrowing

---

[5] ROA.20.
[6] *Id.*
[7] ROA.11.
[8] ROA.258.
[9] ROA.876, 920.
[10] ROA.215.

the issues for appeal, she only contests the district court's dismissal of her claims of retaliation under Title VII and the TCHRA.

## III. Relevant Facts

### A. Zoe Barinaga and her history at ExxonMobil

Barinaga has been a dedicated ExxonMobil employee for over 30 years.[11] Her abilities were recognized early, and she rose through the ranks quickly. Barinaga was proud of ExxonMobil and her place in it. All of that changed in 2018, when Barinaga had to step away from the company line and raise concerns about discrimination and harassment both of herself and others, as well as the company's failure to address those problems. Suddenly Barinaga's career progression and development came to a screeching halt. When she refused to let those concerns drop, the harms to her career increased and continue to this day.

Barinaga is a first-generation Cuban-American.[12] She graduated from the University of Miami with a chemical engineering degree in 1994, and was immediately hired by ExxonMobil.[13] Her first assignment was at the Baytown Chemical Plant (referred to in ExxonMobil documents as "BTCP") as a process engineer.[14] She worked at the Baytown Chemical Plant in various roles of increasing

[11] ROA.602.
[12] ROA.304(82:24-83:1).
[13] ROA.602.
[14] *Id.*

responsibility from 1994 until 2000.[15] She then moved to other plants, taking on various roles, continuing her development of a wide range of capabilities.[16]

Throughout this time Barinaga's talent and work ethic contributed to her reputation as a "very strong asset" for ExxonMobil.[17] Until 2015, every year she was rated in the top tier (at that time "quintiles" or fifths), with the exception of the rating after her return from her leave of absence in 2006.[18]

ExxonMobil represents employee rankings (as opposed to ratings) as "classification levels" or "CLs."[19] Shortly after employee's start at ExxonMobil, a small group of executives will assign a "Potential CL" to that employee, representing how high those executives believe the employee will rise by the end of his career.[20] A "promotion" at ExxonMobil means an increase to the next higher CL.[22] Promotions are accompanied by a salary increase.[23] A higher CL indicates a higher level of role complexity.[24] Employees with CLs of 30 or above are considered to be "executives."[25] Though no one could testify with certainty, the highest potential

---

[15] ROA.601-603.
[16] *Id*.
[17] ROA.376(19:14-21).
[18] ROA.583, ¶2. ExxonMobil's practice was that employees returning from a leave of absence were rated in the middle quintile the first ratings cycle after their return.
[19] ROA.356, ¶7; ROA.711(9:10-13).
[20] ROA.711(9:14-21); ROA.356, ¶8; *see also* ROA.713(17:5-14).
[22] "Promotion" as used in this brief shall mean a classification level or "CL" increase. *See e.*g. ROA.356, ¶7; ROA.704(31:16-24).
[23] ROA.477(21:8-12).
[24] ROA.662; ROA.398(31:7-18).
[25] ROA.356, ¶7.

classification reported was a CL 42.[26] In 2012, Barinaga was promoted to CL 30, thus joining the ExxonMobil executive ranks.[27] Prior to 2018, Barinaga was promoted on average every one to two-and-a-half years.[28]

Though changes in job assignment and promotions do not necessarily coincide,[29] in 2015, Barinaga received both a promotion to CL 31 and a new assignment as Manager of Global Marketing in Global Operations, working under Vice President Cindy Shulman.[30] For the first time Barinaga had difficulty working with a supervisor.[31] Shulman was known by other high-level executives to be harder on women than on men.[32] Shulman made disparaging comments to Barinaga, stating that Barinaga was naïve if she didn't think being Hispanic was why Barinaga had gotten as far as she had, and belittling Barinaga's faith, stating that "you religious people still get bitter when bad things happen."[33] Even so, Barinaga did all she could to maintain a working relationship with Shulman, and acknowledged that other women under Shulman were treated worse than Barinaga was.[34] Shulman gave

---

[26] ROA.712(16:11-14).
[27] ROA.357, ¶12.
[28] ROA.317(22:20-24).
[29] ROA.712(15:16-22).
[30] ROA.357, ¶12; ROA.600.
[31] Sealed Exh.9, p.11, (beginning ROA.1066 [Dkt.60]).
[32] *Id.* at p.20.
[33] ROA.348.
[34] Sealed Exh.9, p.12-14, (beginning ROA.1066 [Dkt.60]).

Barinaga the lowest ratings of Barinaga's career, reducing Barinaga from a top quintile rating (80%) to the second quintile (66%).[35]

While working under Shulman Barinaga had a very frightening encounter with another of Shulman's subordinates. At a working event at a hotel in The Woodlands in May 2016, a number of ExxonMobil employees were drinking heavily in the pool area, with Shulman in attendance.[36] The behavior became so raucous that hotel staff asked one of the employees, Thomas Deman, to leave.[37] Barinaga, who was not drinking, left to return to her room and was followed by Deman.[38] He followed her into and then out of the elevator as she stopped on multiple floors so he wouldn't know where her room was. Barinaga became very scared. She tried to evade him as she also tried to contact a co-worker, Julie Jackson.[39] She told Deman multiple times to stop following her, and to leave her alone. Deman continued to follow her and grabbed her, putting his arms around her and trying to kiss her.[40] He only stopped when Barinaga shoved him and he stumbled as he tried again to follow

---

[35] At the time, employees at ExxonMobil were ranked in "quintiles," though the percentages for the designated quintiles were not actually divided into equal fifths. For example, those in the top quintile were ranked at 80%, but the next ranking was 66%, with those employees referred to as being in the "top third." The next ranking was a 61%. *See* ROA.355, ¶4, *see also* ROA.605.
[36] Sealed Exh.9, p.15, 25-26, 42-43, 53-54 (beginning ROA.1066 [Dkt.60]).
[37] *Id*. at 53.
[38] Sealed Exh.9, p.15-16, 25-26, 42-43, 53-54 (beginning ROA.1066 [Dkt.60]).
[39] Sealed Exh.9, p.16 (beginning ROA.1066 [Dkt.60].)
[40] *Id.*

her out of the elevator she had just exited. Barinaga was shaken and crying, and Julie Jackson went to Barinaga's room and stayed with her.[41]

A couple of weeks later Shulman told Barinaga and Jackson that the event had been investigated and she, Shulman, had almost been fired.[42] Barinaga reviewed ExxonMobil's harassment policy and believed that because Deman wasn't her supervisor, there was no policy violation.[43] She did, however, tell ExxonMobil then-Global Manager of Operations Michael Zamora,[44] whom she also considered a friend.[45] It was an emotional and confusing time for Barinaga, and she asked Zamora not to say anything about it.[46] She did not feel comfortable "raising the issue up her management line."[47] Zamora did not report the incident.[48]

In late 2016, then-Regional Director Joe Blommaert,[49] told Barinaga she was being transferred to Singapore as the Asia Pacific/Europe Manufacturing Business Manager.[50] In that role, Barinaga was responsible for the supervision of two plants in China.[51]

---

[41] *Id.*
[42] *Id.*at 17.
[43] *Id.* at p.21.
[44] ROA.423(9:20-10:1).
[45] ROA.304(82:2-5).
[46] *Id.* at (84:2-25).
[47] Sealed Exh. 9, p.22 (beginning ROA.1066 [Dkt.60]).
[48] ROA.434(93:8)-435(95:18).
[49] ROA.467, ¶2.
[50] ROA.599.
[51]. ROA.481(156:24-156:8).

In 2018 Barinaga moved back to the U.S., and back to Baytown, as Process Manager of one of ExxonMobil's largest sites.[52] For Barinaga this was a welcome return to where her career had started.[53] Barinaga was tapped for the Baytown Chemical Plant process manager role.[54] She was second-in-command to the Baytown Chemical Plant site manager, Kate Lightfoot.[55] Barinaga also received a promotion to CL 32.[56] Both the assignment and the promotion were effective August 1, 2018.

Barinaga loved being an employee of ExxonMobil. She never turned down any assignment, before then or since.[57] She was considered to be a loyal and talented company woman.[58] But Barinaga's faith in her employer suffered its first blow in 2018, when she returned to the U.S. to find that there had been no investigation into the events of May 2016.[59] She believed that the message from ExxonMobil was that such behaviors were tolerated.[60] It was then that she broke ranks for the first time in her career and reported Shulman and Deman to Human Resources for discrimination and harassment. After that, and her subsequent refusal to abandon her concerns,

---

[52] ROA.477(24:10-17).
[53] ROA.643.
[54] ROA.492(220:10-14).
[55] ROA.644.
[56] ROA.640.
[57] ROA.583, ¶5.
[58] *See* ROA.376(19:14-21); ROA.611, 614, Sealed Exh.9, p.50 (beginning ROA.1066 [Dkt.60]).
[59] *See* ROA.329(309:1)-330(310:1).
[60] Sealed Exh.9, p.12, (beginning ROA.1066. [Dkt.60]).

Barinaga was no longer a talent to be developed and maximized. Instead, she became a problem to be solved, or if not solved, shelved away. Worse, she became a cautionary tale for other ExxonMobil employees who might consider stepping out of line.

### B. Barinaga's 2018 Human Resources Complaint

In July 2018, Barinaga met with then-Regional Director of the Americas Zamora[61] to talk about job expectations for her new role, since she would now be in Zamora's organization.[62] Zamora asked Barinaga if she had any "regrets" in relation to the 2016 event and Barinaga said her regrets concerned Shulman and Deman. Barinaga told Zamora she was concerned because Julie Jackson, who had also been subjected to unwanted touching from Deman,[63] was going to be working in the same group as Deman again. Barinaga worried that Deman could be doing the same thing to others.[64] Zamora asked Barinaga if she would be comfortable talking with HR now and she said she would.[65] He warned her there would be consequences, though he didn't specify what those would be.[66] Barinaga felt she should notify then-regional director Joe Blommaert, her direct supervisor, before notifying HR.[67] She

---

[61] ROA.423:10-16.
[62] Sealed Exh. 9, p.22 (beginning ROA.1066 [Dkt.60]).
[63] *Id.* at 42-43.
[64] Sealed Exh. 9, p.22 (beginning ROA.1066 [Dkt.60]).
[65] *Id.*
[66] ROA.310(137:1-10).
[67] ROA.311(140:21)-312(143:7).

also told Blommaert that she was worried about Julie Jackson having to work closely with Deman, and asked Blommaert to keep an eye out for Jackson.[68]

Barinaga told Zamora she would be including Cindy Shulman in the complaint.[69] Zamora tried to talk Barinaga out of including Shulman,[70] despite Zamora having received the same complaints about Shulman from other women.[71]

Barinaga contacted HR about her complaints. In her August 2018 interview, Barinaga described Deman's behavior at the 2016 event.[72] She described Shulman's leadership and actions both in the context of the 2016 event and Shulman's overall disparate treatment of the women under Shulman's supervision.[73] Barinaga told HR she had been afraid to come forward earlier because she was afraid it would harm her career and she did not feel she would have been supported.[74] She also believed the 2016 event with Deman had been addressed.[75] In 2018, however, once Barinaga learned there had been no investigation or action at all, she did not concern herself with the lack of support because she knew it was the right thing to do.[76] She also told HR of her concerns about Jackson being made to work with Deman. [77]

---

[68] *Id.* at p.18 [beginning ROA.1066 [Dkt. 60]).
[69] ROA.312(144:1-10).
[70] *Id*. at 5-16.
[71] Sealed Exh.9, p.20 (beginning ROA.1066 [Dkt. 60]).
[72] *See* Sealed Exh.9, pp.11-17 (beginning ROA.1066 [Dkt. 60]).
[73] *Id.*
[74] Sealed Exh.9, p.18 (beginning ROA.1066 [Dkt.60]), *see also* ROA.303, 80:2-12.
[75] Sealed Exh.9, p.17 (beginning ROA.1066 [Dkt.60]).
[76] ROA.303(81:11-25).
[77] ROA.348, ¶4.

HR interviewed multiple executives who either explicitly stated that Shulman treated female employees more harshly than male employees or described such treatment in detail, including behavior that caused some women to take leaves of absence or even quit.[78] Zamora admitted the perception of Shulman was "that she is a lot rougher on women than [sic] compared to me."[79] Shulman was found to have "demonstrated extremely poor judgment and accountability," and "failed to properly report or address the inappropriate behaviors," among other infractions.[80] In the end, ExxonMobil instructed Shulman to retire.[81]

Deman did not deny his actions toward Barinaga or the other women, but stated he was too drunk too recall.[82] Three female interviewees reported that Deman had subjected four women to unwelcome touching.[83] The investigation concluded that Deman had "demonstrated highly inappropriate behaviors in violation of the Harassment in the Workplace policy," subjected women to unwelcome touching," and "followed [Barinaga] to her hotel room, and subjected her to unwanted touching by attempting to kiss her."[84]

---

[78] Sealed Exh.9, pp.20, 32, 34, 41-42, 49, 52-53 (beginning ROA.1066 [Dkt.60]),
[79] *Id*. at p.20 (beginning ROA.1066 [Dkt.60])
[80] *Id.* at p.4, beginning ROA.1066 [Dkt.60])
[81] *See* Sealed Exh.9, p.4 (beginning ROA.1066 [Dkt.60]).
[82] *Id.* at p.5.
[83] *Id*.
[84] *Id.*

In all comparator cases in ExxonMobil's report, all corroborated harassment complaints resulted in termination.[85] Deman, though, was not terminated or even demoted. He was denied certain bonus incentives for that year, was rated at 3rd Quintile, and had his Potential CL (not his actual CL) lowered.[86] Zamora claimed that he suggested that Barinaga come forward with her complaints regarding Deman because Zamora had "learned Deman may be under consideration for future higher-level roles" and "thought it would be helpful for upper management to be aware of the incident between him and Barinaga."[87] Evidently the investigation findings did not affect Zamora's own view of Deman's fitness for higher positions, however, because the following year Zamora raised Deman's Potential CL back up and rated him in the top quintile of performers.[88]

### C. Barinaga's Work as Baytown Chemical Plant Process Manager

The Baytown Chemical Plant process manager position was a big job – one of the largest in the organization.[89] Barinaga was responsible for the oversight of 250 employees and 160 contractors[90] She had ultimate responsibility for operations of the entire plant.[91] She also served as Incident Commander, the highest ranking

[85] *Id.* at. p.7.
[86] *Id.* at p.8.
[87] ROA.413, ¶6.
[88] ROA.651-652, ROA.724(90:16-92:16).
[89] ROA.477(24:9-17).
[90] ROA.599.
[91] ROA.492(220:10-14).

person for the entire complex during emergencies and natural disasters.[92] By all accounts she did a great job.[93]

Barinaga was told by Lightfoot and Blommaert that she would be replacing Lightfoot as the Baytown Chemical Plant site manager once Lightfoot was reassigned.[94] Everyone asked knew that Barinaga wanted the site manager position.[95] Many at ExxonMobil considered it a foregone conclusion that she would get it.[96] But Barinaga did not have the ability or opportunity to apply for the position. ExxonMobil does not let people know when positions are opening up or when moves are being made.[97] Instead a small group of executives makes those decisions using what they call their "chessboard," with a slate of candidates selected by them, in secrecy.[98]

### D. Barinaga is denied the Baytown Chemical Plant site manager position in 2020.

In late summer or early fall of 2020, then-Senior Vice President of Basic Chemical Integration and Growth, Zamora,[99] asked Barinaga how long they needed to hold Deman accountable.[100] Zamora told Barinaga that Deman was a "valuable

---

[92] ROA.585, ¶15-16.
[93] ROA.585.
[94] ROA.317(220:25-221:11), ROA.319(257:16)-320(258:21), ROA.349, ROA.609, ROA.696, ¶7, ROA.782; Sealed Exh.10, p.4 (beginning ROA.1066 [Dkt.60]).
[95] *See e.g.* ROA.482(169:15-18), ROA.397(27:22-25).
[96] *See e.g*. ROA.322(267:18-269:1).
[97] ROA.782.
[98] *See* ROA.477(24:9-21); ROA.699, ROA.708(77:2-24), ROA.723(59:14-25).
[99] *See* ROA.422:24-423:9.
[100] ROA.317(219:24-220:4).

athlete" and suggested that ExxonMobil wanted to advance Deman's career.[101] After talking with Zamora, Barinaga talked with then-Senior Vice President Blommaert, about her concerns that the recommendations in the 2018 investigation were not being followed.[102] Blommaert told her that people were not happy with her for holding them accountable.[103] Zamora and Blommaert were on the leadership committee making decisions regarding Barinaga's placement and promotions.[104] In October 2020, after the conversations with Zamora and Blommaert, Blommaert told Barinaga that she was not getting the Baytown Chemical Plant site manager position because Blommaert needed to "develop someone else."[105] Blommaert claims that the decision was his alone, despite the purported necessity of leadership approval.[106]

The "someone else" was Wim Blokker.[107] Blokker had been the plant manager at the Mont Belvieu plant for which Barinaga had been considered in 2018.[108] Blokker was a lower CL than Barinaga, indicating a lower complexity of roles.[109] Mont Belvieu was a smaller, less complex stand alone facility that Blokker described as "more family oriented."[110] The total number of people working at Mont Belvieu

[101] ROA.317(218:24-219:15).
[102] ROA.318, p.253:9-22.
[103] ROA.319(254:22-255:3).
[104] ROA.413, ¶8; ROA.479(132:9)-480(134:13); ROA.608.
[105] ROA.317(219:24-220:10).
[106] ROA.413, ¶8; ROA.479(132:9)-480(134:13).
[107] ROA.467, ¶6.
[108] ROA.307(116:9-25).
[109] Sealed Exh.B, ¶34 (beginning ROA.1051 [Dkt. 42]), *see also* ROA.398(31:10-22).
[110] ROA.614.

was lower than the number that Barinaga had under her supervision alone at Baytown Chemical Plant.[111]

No documents indicate that Blokker was being considered for the Baytown Chemical Plant site manager role before Barinaga's talks with Zamora and Blommaert in 2020. Lightfoot, the Baytown Chemical Plant site manager before Blokker, had concerns about Blokker's ability to "grow into" the Baytown Chemical Plant site manager position because he had been at a smaller plant.[112] She was concerned bringing him in would be "disruptive."[113] She believed Barinaga, though, was ready for the site manager position.[114] Even Blokker himself told the EEOC that it would have been "logical" for Barinaga to have followed Lightfoot into the Baytown Chemical Plant site manager position in 2021.[115]

After Barinaga filed suit, ExxonMobil's explanation for the Blokker assignment changed. ExxonMobil now contends that Barinaga was not ready for the site manager role. Blommaert, for example, stated in his affidavit that Barinaga needed more time as process manager.[116] But in addition to having told Barinaga otherwise in 2020,[117] Blommaert told the EEOC that his decision to put Blokker in

---

[111] ROA.614, ROA.599.
[112] ROA.616.
[113] *Id.*
[114] ROA.615.
[115] ROA.614.
[116] ROA.698, ¶7
[117] ROA.609.

the role instead of Barinaga was a "swap" to develop Blokker.[118] He said it was no reflection on Barinaga's ability and he would have "no qualms" putting Barinaga in that role.[119] In fact, he told the EEOC that while he was over the Baytown Chemical Plant, Barinaga was slated for a site manager position for her next role.[120] Various ExxonMobil employees also contended after suit that Barinaga was not qualified for the position because she did not have plant manager experience. Lightfoot had no site manager experience when she was moved from Baytown Chemical Plant process manager to its site manager.[121] Blommaert acknowledged that Barinaga had oversight of two plants during her time in Singapore.[122] None of those people, nor anyone, expressed any concern about her abilities before Barinaga sued.

### E. Barinaga makes a complaint to Human Resources about retaliation and discrimination in November 2020.

In November 2020, Barinaga filed a complaint with Human Resources complaining of discrimination and retaliation.[123] Though ExxonMobil's found no retaliation or discrimination,[124] it did corroborate that Barinaga's ratings had improved each year between 2018 and 2020, and her then-current individual development plan, referred to in ExxonMobil documents as an "IDP," reflected that

---

[118] ROA.608.
[119] *Id.;* ROA 812(158:22-160:25).
[120] ROA.609.
[121] ROA.615.
[122] ROA.481(155:24-8).
[123] Sealed Exh.10, p.2 (beginning ROA.1066 [Dkt.60]).
[124] *Id.*

Barinaga was currently a "candidate for manager positions at medium to large sites."[125]

### F. Barinaga receives no promotion in 2020.

Promotions at ExxonMobil are not typical. Promotions do not involve two people (or more) competing for a single promotion, because the supervisors are not limited in how many promotions they can give.[126] The same people who make the decisions regarding position placements make the promotion decisions.[127] In 2020, for Barinaga that was Joe Blommaert and his regional directors.[128] By late 2020 it had been almost two-an-a-half years since Barinaga's last promotion.[129] This was the longest she had gone without promotion in her career at ExxonMobil, except for 2015 to 2018, which included the period during which Barinaga worked for Shulman.[130]

Every year each employee is considered for a promotion, so if no promotion is given, an decision to deny that promotion must necessarily have been made.[131] Promotion decisions are made later in the year.[132] In late 2020, Blommaert denied

---

[125] *Id.*
[126] ROA.586 ¶20; ROA.705(33:20-23).
[127] ROA.492(218:1-8).
[128] ROA.469,¶9.
[129] See ROA.639.
[130] *See* ROA.583, ¶2.
[131] ROA.717(64:16-65:13), ROA.376(17:2-5).
[132] ROA.705(34:14-22).

Barinaga a promotion.[133] When asked why, he could only say that "I don't believe that two-and-a-half years without a CL increase is exceptionally slow."[134] In contrast, Blokker, who had not filed a complaint, had the same ratings as Barinaga for both 2019 and 2020, and had the same supervisor (Blommaert), received a promotion.[135] While Barinaga's last promotion had been two-and-a-half years prior, Blokker had received a promotion only the year before.[136]

### G. Barinaga files a charge with the EEOC in 2021.

Barinaga filed a charge of discrimination and retaliation with the EEOC in April 2021, complaining of ExxonMobil's failure to promote her and denying her the Baytown Chemical Plant site manager position.[137] The charge was pending throughout 2021 and 2022, including on April 29, 2022, when the EEOC conducted a "fact-finding conference" in which a number of ExxonMobil employees, including Blommaert, Lightfoot, and Blokker, were interviewed under oath via video conference.[138] ExxonMobil's attorneys, Barinaga, and her attorney were also present.[139]

---

[133] ROA.469,¶9.
[134] ROA.491(216:13-20).
[135] ROA.490(212:25)-491( 215:6).
[136] *Id.*
[137] ROA.695.
[138] ROA.807.
[139] ROA.607, 804, 807.

### H. Barinaga receives no promotion in 2021.

As the end of 2021 drew near Barinaga had now gone almost three-and-a-half years with no promotion.[140] Blommaert testified a person might go a long period without a promotion due to performance or because they were close to their potential CL. He could think of no other reasons a person might be denied a promotion for an extended period.[141] Barinaga had received a top quintile (80%) rating in 2020, and was rated "Excellent" the following year, when ExxonMobil changed its rating system.[142] At a CL 32, she was well away from her Potential CL of 38.[143] Neither of Blommaert's possible reasons could explain Barinaga's time without a promotion, and no other witness or documents provide an explanation.

### I. Barinaga files suit.

In August 2022, Barinaga filed this lawsuit, alleging discrimination and retaliation against ExxonMobil.[144] ExxonMobil was served on September 19, 2022.[145]

### J. Barinaga receives no promotion in 2022.

ExxonMobil was able to identify only twenty executives in all of ExxonMobil's U.S. operations who had gone four years without a promotion

140 Barinaga's last promotion had been effective August 1, 2018. *See* ROA.604,640.
141 ROA.717-718.
142 ROA.605.
143 ROA.357, ¶11.
144 ROA.31.
145 ROA.27.

between 2020 and 2023.[146] Eight of those had their potential lowered,[147] indicating performance or other issues.[148] Others were within two or three ranks of their potential CL. Only five people had 1) gone four years without a promotion, 2) had no reduction in Potential CL, and 3) were five or more CLs away from their Potential CL.[149] Put another way, Barinaga was one of five people identified in all of US operations without performance problems and far from her potential CL who was not promoted in four years. ExxonMobil stated there were "hundreds of employees with a Potential 38."[150] So even if the list provided by ExxonMobil was limited to Barinaga's potential of CL 38 from a list of hundreds Barinaga would have been one of five in "hundreds." [151]

Janet Matsushita became the Senior Vice President over Barinaga's position in 2022. On September 22, 2022, ExxonMobil was served with Barinaga's lawsuit.[152] Matsushita was aware of the lawsuit.[153] Also in September of 2022, Matsushita was deciding promotions for Barinaga and others in her organization.[154]

---

[146] The district court allowed Barinaga to obtain information specifically pertaining to executives in ExxonMobil's U.S. operations who had gone four or more years without a CL increase. ROA.1036:25-1041:9; Sealed Exh.27 (beginning ROA.1066 [Dkt.60]).
[147] Sealed Exh.27 (beginning ROA.1066 [Dkt.60]).
[148] ROA.356 ¶8.
[149] *Id.*
[150] *Id.*
[151] ROA.1033-1041 (Discussion leading to the district court's order to ExxonMobil to produce a list of employees in operations whose positions had not changed in four and five years.)
[152] ROA.27.
[153] ROA.519, ¶5.
[154] ROA.399(34:14-36:12); see Sealed Exh.27 (beginning ROA.1066 [Dkt.60]), reflecting a "reviewed" date of September 29, and "PMG A" reviewed date of September 30 (or possibly

Matsushita was not limited in how many people she could promote.[155] HR provided Matsushita a list of 28 people with CLs ranging from 30 to 33 who were among those Matsushita considered for promotions in late 2022.[156] Of those, seven had not had promotions since 2018.[157] Four of those seven were promoted. Another was facing a reduction in potential, again indicating performance issues.[158] HR's recommended that Barinaga be promoted in that cycle.[159] She had received an "outstanding" on her performance review that year.[160] Matsushita denied Barinaga the promotion.

When asked what Barinaga could have done to get a promotion in 2022, Matsushita only vaguely suggested that she needed more "Outstandings" in a row.[161] Nothing in any document, testimony, or affidavit suggests that anyone else at ExxonMobil has ever been held to that standard to earn a promotion. In fact, ExxonMobil's internal documents state that "*The most recent* performance … is also

---

10/30 based on a notation in the final column). "PMG-A" is the "Personnel Matters Guide" group responsible for reviewing promotions for employees of CL 30-34, and is comprised of functional presidents, executive vice presidents, and corporate department heads. *See* ROA.623-624.

[155] ROA.705(33:20-23).

[156] ROA.704(32:22)-705(33:6); Sealed Exh.27 (beginning ROA.1066 [Dkt.60]).

[157] *Id.*

[158] Sealed Exh.27 (beginning ROA.1066 [Dkt.60]), ROA.356, ¶8 (discussing why potential might be lowered). *See also* Sealed Exh.9, p.9 (beginning ROA.1066 [Dkt.60]) (Deman's potential was temporarily lowered as a result of his misconduct.)

[159] *Id.,* Exhibit 27 was prepared by HR, and noted "Promote in 2022" next to Barinaga's name.

[160] ROA.357-358, ¶14.

[161] ROA.400(37:7-24).

used alongside potential as an input to promotion timing."[162] As promotion decisions were made only once a year, Matsushita's denial of the 2022 promotion ensured that Barinaga would now go more than five years without a promotion. [163]

ExxonMobil also provided a list of U.S. operations executives who had gone five years without a promotion between 2019 and 2023. That list included 23 names.[164] Of that list, only four executives were four or more CLs from their Potential CL and had had no reduction in their Potential CL. Only Barinaga was six or more positions from her Potential CL, had no Potential reduction, and had been denied a promotion for five years.[165]

### K. Barinaga is denied the Baytown Chemical Plant site manager position in 2023.

Barinaga, as Process Manager, had "end responsibility of operations" at Baytown Chemical Plant.[166] Barinaga continued to perform very well. February 2021's Winter Storm Uri was considered one of the worst natural disasters to hit Baytown in decades, including even Hurricane Harvey.[167] Barinaga was the primary Incident Commander, meaning she was the highest ranked person at the entire Baytown Complex, which included the chemical plant and the refinery, during the

[162] ROA.630 (emphasis added).
[163] ROA.399(34:14-22); ROA.717(63:22-64:3).
[164] Sealed Exh.26 (beginning ROA.1066 [Dkt.60]).
[165] *Id.*
[166] ROA.492(220:12-14).
[167] ROA.585, ¶15-16.

storm.[168] The Baytown Complex received commendations and was recognized as a top performer, even including non-ExxonMobil facilities.[169]As a result of its ability to so quickly get back online, Baytown Chemical Plant was able not only to help others during the crisis, but also was one of the few working suppliers in the area for polypropylene, which is used in producing facemasks.[170] COVID was still a major concern then, and this capability in turn increased the Baytown Chemical Plant revenues significantly.[171] Baytown Chemical Plant had the second highest revenue of any U.S. ExxonMobil chemical plant for the year, and the highest ever in Baytown Chemical Plant history.[172]

During Barinaga's time as the Process Manager, the Baytown Chemical Plant received multiple safety awards, including the Texas Chemical Counsel Distinguished Safety Award, the Sam Mannan Award for no process safety events, and the American Fuel and Petrochemical Manufacturers (AFPM) Elite Silver Safety Award in 2022.[173] Baytown Chemical Plant also received the AFPM Elite Gold Safety award for its 2023 performance.[174] Blommaert admitted that as the

---

168 ROA.585, ¶15-16.
169 ROA.585, ¶16.
170 *Id.*
171 *Id.*
172 *Id.*
173 *Id.*¶18.
174 *Id.*

person with end responsibility over operations, if the plant exceeded goals on a regular basis, as it did, Barinaga deserved credit for those accomplishments.[175]

In all conversations over several years in which Barinaga made her desire for the Baytown Chemical Plant site manager position known to Blommaert, Blokker, Matsushita, Lightfoot, the regional director Jason Duncan, and Barinaga's purported "mentor" Robert Johnston, no one ever told her that she lacked any necessary experience or skills.[176] All documents from ExxonMobil show that Barinaga was fully ready for a site manager position.[177] Johnston, a former participant in the decision-making committees over Barinaga, said that in 2021 and 2022, Barinaga was definitely ready for a site manager position.[178] She was never offered a site manager position during that period, or ever.[179] Barinaga was not informed until January 2023 that she was being considered for roles outside of Manufacturing, and even then was never told what those positions might be. [180]

[175] ROA.492(220:22-221:12).
[176] ROA.583, ¶4; ROA.585, ¶17.
[177] ROA.608,609,615.
[178] ROA.379(40:17-24).
[179] At one point the regional director Duncan asked Barinaga if she would be able to move to Beaumont, but he did not tell her for what role, if any, she was actually being considered. ROA.584, ¶9.
[180] ROA.684, 689.

ExxonMobil leadership admitted Barinaga was "on the list" for the site manager position after Blokker.[181] Emails for 2021 and 2022 reflect the same.[182] The 2020 investigation report showed that her Individual Development Plan reflected that she was ready for a medium to large site at that time.[183] As late as 2023 Barinaga's Individual Development Plan had the Baytown Chemical site manager position listed as her next anticipated position.[184]

Barinaga's supervisors discussed in emails to each other that she wanted that position.[185] ExxonMobil's internal documents state that "individual interest" is one of the factors to be considered to "determine appropriate near-term job moves and next assignments."[186] Matsushita and Zamora both testified that ExxonMobil considered the employees' wishes in placement. [187] Zamora said "if somebody wants to be in IT […] I am unlikely to put an IDP that says they are going to be SVP of ops."[188] But a stark departure from an employee's stated preference in assignments is exactly what they did to Barinaga.

---

181 ROA.404(54:12-17).
182 Sealed Exh.10, p.6 (beginning ROA.1066 [Dkt.60]); ROA.408, 73:10-74:3. *See also* ROA.401(44:11-19).
183 Sealed Exh.10, p.2 (beginning ROA.1066 [Dkt.60])
184 ROA.408(73:10-74:3); ROA. 683.
185 ROA.689.
186 ROA.629.
187 ROA.401(44:25)-402(45:3).
188 ROA.723(57:12-17).

On June 7, 2023, Barinaga was notified she was moving to a role in Major Growth Ventures, a role that is neither Manufacturing nor Business, but a hybrid.[189] No one had told Barinaga that she was being considered for that role and she was surprised.[190] ExxonMobil now provides several different justifications for the decision. The first is that there were fewer roles in Manufacturing, so ExxonMobil was having to move people out.[191] Matsushita says that Barinaga was moved because the Major Growth Ventures position was best for Barinaga's growth.[192] Matsushita testified that the decision to remove Barinaga from the line of succession behind Blokker was made when they identified the position for her in Major Growth Ventures.[193] The documents say otherwise.

Immediately after a January 23, 2023 meeting with Barinaga, where Barinaga reiterated her desire for the site manager position, Matsushita sent a summary of the meeting to the regional director, Jason Duncan.[194] On February 21, 2023, Matsushita asked Zamora if Barinaga's ultimate position would be in "ventures or Chem products."[195] He stated her future would be in Major Growth Ventures. He admitted this was not "obvious" since her "ultimate position has been in ops for quite a while

---

[189] ROA.335(337:23)-336(338:3).
[190] ROA.342(365:5-11).
[191] *See e.g*. 359, ¶27-28.
[192] ROA.359, ¶28.
[193] ROA.404(54:18-55:7).
[194] ROA.689.
[195] ROA.681-682.

now."[196] They jumped into action to get Barinaga out of Manufacturing. Matsushita acknowledged that it was out of the ordinary for her to get involved in those move discussions.[197] Duncan and Matsushita began discussing other places Barinaga could be sent.[198] They discussed moving her to Low Carbon Solutions, entirely out of Product Solutions, where Barinaga had worked her entire career.[199] They then tried to move Barinaga into an IT-type position called Polaris BVM.[200] In April 2023 emails they that Barinaga was the "lead candidate" for that position, even though she lacked necessary fuels and lubricants background.[201] They were concerned that if they did not get Barinaga out quickly enough HR may be "directed to another name."[202] The president, Karen McKee, expressed to her team of senior vice presidents that she was "really eager to endorse plan [sic] for ZB this month."[203] That same email showed that another person had been selected for the Polaris BVM position and there was no plan for Barinaga at that time, indicating that McKee was not particular about what plan she endorsed to get Barinaga out.[204] As late as April

---

[196] *Id.*
[197] ROA.398(29:1-7).
[198] ROA.506(102:20-103:11); ROA.683-684.
[199] In 2022 the ExxonMobil Chemical Company and ExxonMobil Fuels and Lubricants organization were combined to form Product Solutions. ROA.359. All roles Barinaga had fulfilled throughout her career were now within the Product Solutions organization. *See* ROA.598-602.
[200] ROA.678-680.
[201] ROA.679.
[202] ROA.678.
[203] ROA.669.
[204] ROA.668-669.

28, 2023, Barinaga was still listed as the backup candidate for the Polaris project, but on May 18 it was decided she was going to Major Growth Ventures.[205]

ExxonMobil now claims that it did not know that Blokker would need to be replaced until after Barinaga had already been moved.[206] Blokker's individual development plan reflects that per a March 27, 2023, his mobility was limited by "schooling and/or health considerations."[207] On May 23, 2023, Matsushita referenced the "extended duration [of Blokker's leave] during this critical phase of BCEP" and discussed potential replacements.[208] Other emails reference the correlation between Barinaga's move and Blokker's situation.[209]At the very least, ExxonMobil was aware that someone else may need to take over the site manager position well before its June 7, 2023, announcement of Barinaga's move.

During this time the Baytown Complex was preparing to bring online a $2 Billion project that had been five years in the making.[210] The project was called the Baytown Chemical Expansion Project ("BCEP" or the "Expansion Project")."[211] Barinaga's role had been integral in the Expansion Project from the start and she was supposed to be the integrator for its startup.[212] In 2021, even years before the

[205] ROA.685.
[206] ROA.360, ¶10.
[207] ROA.659.
[208] ROA.684.
[209] ROA.686.
[210] ROA.342(365:12-18).
[211] ROA.342(365:12-14).
[212] ROA.342(364:25-365:22); ROA.504(95:5-96:3).

Expansion Project was nearing startup, documents emphasized the importance of "continuity" at Baytown Chemical Plant in relation to the site manager and process manager positions.[213] Blommaert stated in 2020, "Key is that BTCP Process/Site Manager provide stability for Baytown Complex – is critical for site optimizations."[214] It was one of ExxonMobil's largest facilities.[215] Continuity as Baytown was of even greater concern in light of the Expansion Project startup.[216]

ExxonMobil's actions in 2023 resulted in the two top positions leaving the Baytown plant at essentially the same time.[217] Blommaert testified that even when the process manager moves up into the site manager position at the same plant, it leaves ExxonMobil "very, very exposed."[218] He could not provide a single example of a time in leadership that he moved both the site manager and process manager of a plant out at the same time.[219] Matsushita testified that moving both the process manager and the site manager out at the same time "is not typical." [220] Yet in 2023, Manufacturing leadership was so determined to keep Barinaga from the Baytown Chemical Plant site manager position that they were willing to take that risk. Less

[213] ROA.655.
[214] ROA.654.
[215] ROA.503(88:12-13).
[216] ROA.406(65:8-8).
[217] ROA.505(98:23-100:13).
[218] ROA.482(169:2-8).
[219] *Id*. at 9-14.
[220] ROA.406(65:15-21).

than six months after Barinaga was removed from Baytown Chemical Plant it experienced its first Tier 2 or higher process safety event in four years.[221]

ExxonMobil had changed its mind about plant manager assignments after announcements other times. Just prior to Duncan's deposition, ExxonMobil reversed course on the Mont Belvieu plant manager after the announcement had been made.[222] That change was made "[b]ecause there was another personnel move that involved another plant manager that was – had not been anticipated."[223] In other words, a situation exactly like the one ExxonMobil found itself in summer 2023, with one of its largest facilities, at a crucial startup of a new project, losing its top two people at the same time.[224] Nevertheless, ExxonMobil would not change its mind to put Barinaga in the position for which she was fully qualified, for which only she could provide the needed continuity, that she had wanted for years, and for which there was an opening.

In 2023, Matsushita was responsible for selecting the new Baytown Chemical Plant site manager.[225] She chose Glenn Hayes. [226] Hayes had never appeared on a "chessboard" for the position until after ExxonMobil had found a position for

---

[221] ROA.586, ¶19.
[222] ROA.500(76:24-77:3).
[223] *Id.* at (77:4-7).
[224] ROA.504(96:4-97:10).
[225] ROA.520, ¶10.
[226] *Id.*

Barinaga elsewhere.[227] Hayes was a CL 31, lower than Barinaga.[228] At the time of his selection Hayes was working outside of Manufacturing, coincidentally in Major Growth Ventures. [229] He was moved back into Manufacturing to take the spot Barinaga had been told for five years would be hers, after she was removed because there were purportedly too few positions in Manufacturing.[230] Matsushita claimed in her affidavit that she chose Hayes for his "prior performances, experience, and development,"[231] but when asked she did not know what role Hayes had or what his CL had been in prior his selection. [232] Matsushita referred to Hayes's experience in the Sarnia operation as a reason for his qualification in her affidavit,[233] but she'd identified Sarnia as an operation of such a lower relative complexity that its process manager position is not even an executive position.[234] Hayes's performance ratings in 2021 and 2023 were lower than Barinaga's.[235] ExxonMobil points to his refinery experience, suggesting Barinaga was not chosen because she lacked that. Neither Lightfoot nor Blokker had refinery experience before taking over the Baytown

[227] ROA.1025:19-1030:6. (The district court and ExxonMobil discuss a heavily redacted "chessboard" document and confirm that Hayes was neither redacted from nor on the document).
[228] Sealed Exh.B, ¶36 (beginning ROA 254 [Dkt.41]).
[229] ROA.398(30:18-24).
[230] ROA.520, ¶10.
[231] *Id.*
[232] ROA.402(46:8-17).
[233] ROA.520, ¶10.
[234] ROA.405(59:3-8).
[235] ROA.605, Sealed Exh.22, (beginning ROA.1066 [Dkt.60]). Hayes's and Barinaga's 2022 ratings were the same. *Id.*

Chemical Plant site manager position.[236] At the time Barinaga was passed over a second time for the Baytown Chemical Plant site manager position, Blokker was still listed as needing refinery experience as a development area.[237]

Finally, ExxonMobil justified its decision to move Barinaga to Major Growth Ventures by saying there were fewer positions in Manufacturing, so it had to move people out.[238] Contradicting that argument is the fact that the person moved into the Baytown Chemical Plant site manager position instead of Barinaga was moved *from* Major Growth Ventures, a role outside of Manufacturing, *into* Manufacturing to take the role.[239] Emails reflect leadership considered bringing others from outside Global Operations for other positions, as well.[240]

**L. Barinaga files a second charge with the EEOC in 2023.**

On September 23, 2023, Barinaga filed a second charge of discrimination and retaliation with the EEOC, alleging discrimination and retaliation in relation to the denial of promotions and the Baytown Chemical Plant Site Manager position.[241]

**M. Barinaga finally gets a promotion.**

On January 1, 2024, Barinaga was promoted to a CL 33, after five and a half years without a promotion.

---

[236] *See* ROA.613, 615.
[237] ROA.659.
[238] *See* ROA.359, ¶27.
[239] ROA.402(45:23-46:12).
[240] *See* ROA.699.
[241] ROA.351.

### N. Barinaga's Compensation

As ExxonMobil points out Barinaga was well-compensated for her work with ExxonMobil.[242] She received a sizeable salary, bonuses, and ExxonMobil stock as part of her compensation package.[243] Barinaga's compensation is in line with ExxonMobil's compensation structure for highly-rated employees of Barinaga's seniority.[244] Absent retaliation her income would have been higher.

Barinaga's salary is not relevant because her high earnings do not make her more or less likely to have been subjected to retaliation. At no point did Barinaga agree that she would accept compensation from ExxonMobil in return for remaining silent in the face of what she believed violated others' and her own rights to be free from discrimination, harassment, and retaliation.

---

[242] ROA.402(45:23-46:12).
[243] ROA.586 ¶21.
[244] *Id.*

## SUMMARY OF THE ARGUMENT

Zoe Barinaga established that she engaged in protected activity, and that she was subjected to adverse employment actions. The district court acknowledged that these prongs of Barinaga's prima facie case were established.

The district court relied on an erroneous standard in determining that Barinaga failed to establish a causal link between her protected activity and the adverse employment actions. Specifically, the district court applied a strict temporal requirement without consideration of the other facts and circumstances of the case. Further, the court failed to consider Barinaga's discussions with Michael Zamora and Joe Blommaert in 2020 and the lawsuit filing in 2022 as protected activity, instead considering only the two formal complaints to HR and the EEOC filings. When the additional protected activity and conduct of the decisionmakers are considered, in addition to the temporal proximity, Barinaga has produced sufficient evidence of the causal link.

Barinaga presented evidence that ExxonMobil's contradictory and shifting explanations for denying Barinaga the Baytown Chemical Plant manager assignments are not true, not credible, or otherwise unworthy of belief. She presented evidence that ExxonMobil's denial of promotions to Barinaga for such a long period was both very unusual and unexplained. She presented sufficient

evidence to establish a genuine issue of material fact for a reasonable factfinder to determine the explanations offered are pretext for retaliation.

The district court determined that Barinaga's claims of retaliation for the promotion denials before November 5, 2022 were not timely. Barinaga raised the issue of the denial of promotion in her April 2021 charge of discrimination and in her lawsuit. All subsequent promotion denials arose from the April 2021 protected activity and so, under Fifth Circuit precedent, she was not required to exhaust her remedies regarding those denials, which were properly before the district court.

## IV. ARGUMENTS AND AUTHORITY

**ISSUE 1**

**The district court erred when it granted summary judgment in favor of ExxonMobil because Barinaga presented evidence sufficient to establish a prima facie case for her retaliation claims and to demonstrate that ExxonMobil's purported non-retaliatory reasons for its actions were pretextual.**

### A. Standard of Review

This Court reviews the district court's grant of summary judgment *de novo,* applying the same legal standards that the district court was to apply in determining whether summary judgment was appropriate.[245] A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and

[245] *Lamar Adver. Co., v. Cas. Co*., 396 F.3d 654, 659 (5th Cir. 2005).

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law."[246] The moving party has the burden of showing there are no genuine issues of material fact in dispute.[247] "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[248] "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law."[249] The reviewing court "must view all evidence and draw all justifiable inferences in favor of the nonmovant."[250] "At summary judgment, this court must 'disregard all evidence favorable to the moving party that the jury is not required to believe[.]'"[251]

**B. Summary of Relevant District Court Findings**

The district court concluded that only Barinaga's complaints regarding the denial of the Baytown Chemical Plant site manager positions in 2020 and 2023, and promotion denials after November 5, 2022, were timely.[252] The district court further concluded that Barinaga failed to establish a prima facie case with regarding retaliation because she failed to establish a causal link between her protected activity

---

[246] FED. R. CIV. P.56(C).
[247] *Celotex Corp.v. Catrett*, 477 U.S. 317, 323 (1986).
[248] *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015).
[249] *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009).
[250] *Coleman v. BP Expl. & Prod., Inc.*, 19 F.4th 720, 726 (5th Cir. 2021).
[251] *Viacom International Inc., v. IJR Capital Investments, L.L.C.*, 891 F.3d 178, 196 (5th Cir. 2018), quoting *Moore v. Willis ISD*, 233 F.3d 871, 874 (5th Cir. 2000).
[252] ROA.898.

and the adverse employment actions.[253] Finally, the district court determined that even if Barinaga had established a prima facie case, she could not prove pretext.[254]

In determining that Barinaga could not establish the causal link necessary for a retaliation claim, the district court erred by limiting its analysis to the temporal relationship between the protected activities and the adverse action, ignoring other indicia of a causal relationship. The district court then determined that even if Barinaga had established a prima facie case she failed to establish pretext with regard to ExxonMobil's purported non-retaliatory justifications for those actions. [255]

To make its determinations that Barinaga failed to establish a genuine issue of material fact regarding retaliation, the district court necessarily had to have:

- Accepted controverted evidence in support of movant ExxonMobil;
- Disregarded evidence in favor of nonmovant Barinaga;
- Made credibility determinations based on assertions or evidence a factfinder would not be required to believe; and
- Resolved disputed issues of fact in favor of ExxonMobil.

The district court explicitly stated that it "did not consider or rely on" an exhibit presented by Barinaga in support of her opposition to summary judgment, though

[253] ROA.917-918.
[254] ROA.918-919.
[255] The district court evaluated discrimination claims arising directly from Shulman and Deman's actions in 2015 and 2016 and deemed them untimely. However, Barinaga did not assert such claims, and details relating to those events were included only as relevant background for Barinaga's subsequent complaints from 2018 forward. The ongoing effects of Shulman's discriminatory lower ratings, were included but are excluded from this appeal.

the district court did not determine that evidence was incompetent or inadmissible.[256] Each of these actions is contrary to the law guiding consideration of a motion for summary judgment. The evidence, when viewed under the proper legal standard, supports denial of summary judgment, and supports this Court's reversal of the district court's summary judgment dismissing Barinaga's claims of retaliation.

### C. Barinaga's prima facie case of retaliation.

#### i. Elements of the prima facie case.

"Section 704(a) of Title VII of the Civil Rights Act of 1964 makes it 'unlawful for an employer to discriminate against any of his employees or applicants for employment' who have either availed themselves of Title VII's protections or assisted others in so doing."[257] "The anti-retaliation provision seeks to prevent employer interference with 'unfettered access' to Title VII's remedial mechanisms by prohibiting employer actions that are likely to deter discrimination victims from complaining to the EEOC, the courts, and employers."[258]

Because Barinaga's claims of retaliation are based on circumstantial evidence, the courts apply the *McDonnell-Douglas* analysis to the retaliation claims. To establish a prima facie case of retaliation, Barinaga must show that 1) she engaged in protected activity, 2) she suffered an adverse employment action, and 3) there was

---

[256] ROA.876-877.
[257] *Robinson v. Shell Oil Co.*, 519 U.S.337, 338 (1997).
[258] *Burlington N. & Santa Fe Ry. Co.,* 548 U.S. 53, 54, (2006).

a causal connection between the protected activity and the adverse employment action.[259] Such a showing gives "rise to an inference of retaliation."[260] Once Barinaga establishes her prima facie case, the burden shifts to ExxonMobil "to articulate a legitimate, non-retaliatory reason for the adverse employment action."[261] If ExxonMobil does so, the burden shifts back to Barinaga to demonstrate that those reasons are pretext.[262]

The district court acknowledged that Barinaga met the first two elements of her prima facie case, but erred in focusing solely on temporal proximity for a causal link, and then only for the formal, written complaints to HR and the EEOC.[263] The district court ignored other evidence of causation that, either alone or with the timing of various activities related to Barinaga's protected activity, establish the casual link.

The district court acknowledged that Barinaga engaged in protected activity in 2018 with her internal complaint, her November 2020 internal complaint, and with her 2021 EEOC filing.[264] The court disregarded all other protected activity, including Barinaga's conversations in late summer or fall of 2020 (Zamora), asking her to let go of her concerns about Deman, and shortly thereafter with Blommaert

---

[259] *Cabral v. Brennan*, 853. F.3d 763, 766-767 (5th Cir. 2017) (quoting *Jenkins v. City of San Antonio Fire Dep't*, 784 F.3d 263, 269 (5th Cir. 2015)).
[260] *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 408 (5th Cir. 1999).
[261] *Nall v. BNSF Ry. Co*., 917 F.3d 335, 340 (5th Cir. 2019) (quoting *Sandstad v. CB Richard Ellis, Inc*., 309 F.3d 893, 896 (5th Cir. 2002).
[262] *Cannon v. Jacobs Field Servs. N. Am., Inc.,* 813 F.3d 586, 590 (5th Cir. 2016).
[263] ROA.917-918.
[264] ROA.917.

about her concerns regarding ExxonMobil's handling of the matter.[265] Finally, the district court disregarded her most drastic act of protected activity, filing this lawsuit in August 2022.[266],In analyzing the promotion denials in late 2022, the district court stated:

> And as to the CL promotions, the only timely CL actions (or inactions) would be after November 5, 2022, for Barinaga's Title VII Claims and after March 5, 2023 for her state-law claims. *See supra* Sections III(A)(1)(a), (2). So the next denial of a CL promotion that would still be timely would have taken place in late 2022 or early 2023. (Dkt. No. 45-12 at 3). But late 2022 or early 2023 is over a year after Barinaga filed her first EEOC charge on April 1, 2021. (Dkt. No. 52-20). [267]

The district court also failed to consider that the April 2021 EEOC process was ongoing until the filing of suit in August 2022, after which time the lawsuit was active. 26 U.S.C. Section 704(a) states:

> "It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment…because he [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

---

[265] ROA.318(253:9-22).
[266] ROA.31; *See Shackelford,* 190 F.3d at 408 (referencing temporal relation between activity in the lawsuit and adverse employment actions as evidence of a causal link).
[267] ROA.918.

Barinaga has been participating in proceedings under this chapter in an unbroken chain since, at least April 2, 2021.[268] The "continuous nature of the protected activity supports considering the full set of facts leading up to" the acts "for which [Barinaga] can and does bring suit.[269]

The district court also erred in applying a rigid time limit on what may be considered temporally proximate in relation to protected activity:

> Thus, for both the plant-manager decisions and the CL promotions, these time gaps clearly fall outside the two-and-a-half month, two-month, and six-and-a-half week periods that have been close enough for the Fifth Circuit.[270]

Those timelines are not mandatory or cookie-cutter templates. "Temporal proximity can be an indicator or a proxy for [but-for] causation, but it is not required or dispositive if there is other evidence of knowledge."[271] Facts can "support a causal link that does not rest on the question of temporal proximity."[272] Though "[t]he protected act and the adverse employment action must be very close in time to establish by causation alone,"[273] Barinaga presented substantial evidence in addition to suspicious timing. The subject of Barinaga's complaints arose multiple times over

---

[268] ROA.347.

[269] *See Ayodeji Awe v. Harris Health Sys.*, 2026 U.S. App. LEXIS 733, at *6 (5th Cir. Jan. 12, 2026).

[270] ROA.918.

[271] *Ayodeji Awe v. Harris Health Sys.*, 2026 U.S. App. LEXIS 733, at *7.

[272] *Id.*

[273] *Porter v. Houma Terrebonne Hous. Auth. Bd. Of Comm'rs*, 810 F.3d 940, 948 (5th Cir. 2005).

from 2018 through 2021, and the same people were involved in the complaints and the adverse decisions.[274] This alone would be sufficient to establish a causal link between Barinaga's protected activity and the adverse actions. But Barinaga also has temporal proximity.

**ii. Evidence of a causal link between Barinaga's protected activity and the 2020 Baytown Chemical Plant site manager denial.**

Barinaga first brought her complaint regarding Shulman and Deman to ExxonMobil HR on July 27, 2018. Zamora warned Barinaga that "there would be consequences" if she went to HR.[275] He later tried to discourage her from including Shulman in the complaint.[276] The investigation concluded in September 2018.[277] Shulman was forced into retirement and Deman was reprimanded.[278] In late summer or early fall of 2020 it was clear that Barinaga's complaints of discrimination and harassment were still on the minds of ExxonMobil executives, including Barinaga's supervisors, when Zamora called Barinaga and asked how long she thought they needed to hold Deman accountable, and implied she should let it go so Deman's

[274] *See Ayodeji Awe v. Harris Health Sys*., 2026 U.S. App. LEXIS 733, at *6-7. (The employee repeatedly raised complaints from October 2018 through April 2021. In August, he was denied a new role for which he applied. Many of the same people were involved in the complaints and the employment decisions. This was sufficient to establish a causal link to the adverse employment action in April 2021.)

[275] ROA.310, 137:4-10.

[276] ROA.312, 144:1-16.

[277] Sealed Exh.9 (beginning ROA.1066 [Dkt.60]).

[278] *Id.*

career could progress.[279] Zamora appeared interested in advancing Deman's career and was aware of Barinaga's complaints.[280] He was also on the leadership committee deciding Barinaga's future at ExxonMobil.[281]

Shortly after her talk with Zamora, Barinaga told Blommaert that she was concerned ExxonMobil was not following the recommendations of the Deman investigation.[282] Blommaert told her that there was nothing else to do unless she wanted to open another complaint, and that people were upset because she was holding them accountable.[283]

Blommaert and Zamora knew of Barinaga's complaint in 2018 and she talked to them about continued concerns in 2020. Those discussions with Zamora and Blommaert were protected activity.[284] Shortly after those conversations, in October 2020, Blommaert told Barinaga she was not getting the site manager position.[285]

Blommaert had control over who was considered for positions in his chain of command.[286] On or about October 22, 2020, leadership, including Blommaert and

---

[279] ROA.348.
[280] ROA.413, ¶7; ROA.650, 651.
[281] ROA.413, ¶8.
[282] ROA.318(253:9-22).
[283] ROA.318(253:23)-319(254:5).
[284] *See* 42 U.S.C. 2000e-3(a), see also *Phillips v. Enter. Prods. Co.,* 2026 U.S. App. LEXIS 674 at *5 (5th Cir. January 9, 2026) (not designated for publication.) (An employee's only protected activity was a verbal complaint to his supervisor, and that was sufficient to establish the protected activity prong of his prima facie case).
[285] ROA.318(251:11-253:22).
[286] ROA.477(24:18-25:1).

Zamora, voted to name Blokker as the Baytown Chemical Plant site manager.[287] Blommaert made the decision regarding the site manager position in 2020, and leadership, including Zamora, reviewed that decision.[288]

Not only is the temporal connection very suspicious, but other details independently support a causal link. Zamora had tried to discourage Barinaga from including Shulman, in her 2018 complaint. Zamora subsequently raised Deman's potential CL and gave him the highest available ranking, and suggested Barinaga let her complaints against Deman go. Blommaert explicitly told Barinaga that people were upset with her for holding them accountable.[289] Even without the temporal proximity to the site manager decision, these statements by the decision makers reflect a causal link.

**iii. Evidence of a causal link between Barinaga's protected activity and the 2020-2022 promotion denials.**

Based on prior timing and her superior reviews, Barinaga would have expected a promotion effective January 1, 2021, since it had been almost two-and-a-half years since her last promotion.[290] Blommaert stated that every employee was considered yearly for promotion.[291] Blommaert also testified that the only reasons a

---

[287] ROA.657.
[288] ROA.468 ¶6; ROA.413 ¶8; ROA.479(9:18).
[289] ROA.319(254:22-255:3).
[290] *See* ROA. 1039:2-1040:2. Barinaga learned of her promotion on the date of the hearing (December 6, 2023) and its effective date was January 1, 2024.
[291] ROA.717(63:24)-718(65:7).

person would go an extended period without promotions were 1) poor performance or 2) they were close to their potential CL.[292] Barinaga had excellent reviews and was not close to her potential CL.

Matsushita testified that promotion decisions were generally made at the end of the year. [293294] Blommaert was responsible for deciding if Barinaga would get a promotion in 2020.[295] Soon after Barinaga's complaints to Blommaert about ExxonMobil's handling of her complaint and his statement that people are not happy with her for holding them accountable, Barinaga is denied a promotion in 2020. This establishes a causal link.

Robert Johnston was responsible for evaluating Barinaga for a CL promotion in September of 2021.[296] Despite his being a high-level executive and Barinaga being an executive in his direct chain of command, Johnston claims he did not know about Barinaga's EEOC complaint.[297] However, Zamora was the Senior Vice President of Basic Chemicals at that time, and Johnston's direct supervisor.[298] Zamora did know about Barinaga's complaints and the pending EEOC investigation. Barinaga filed an

---

[292] ROA.718(65:8-68:19).

[293] ROA.399(34:14-22); see also Sealed Exh. 27 (beginning ROA.1066 [Dkt.60], showing the 2022 decision being made in September or October.

[295] ROA.491(215:21-216:20).

[296] ROA.526, ¶5.

[297] ROA.525, ¶4.

[298] ROA.423:1-9.

EEOC charge on April 2, 2021.[299] Despite a second consecutive rating of excellent, and now three-and-a-half years since her last promotion, Barinaga was denied a promotion again in 2021.

Given Zamora's remarks about Barinaga's continued complaints and his advocacy for the subject of those complaints, Zamora's knowledge of the EEOC filing, and consideration of the full chain of events shows a casual link between the protected activity and the denial of the promotion in 2021.[300]

ExxonMobil was served on September 19, 2022.[301] Matsushita admitted she was aware of Barinaga's lawsuit.[302] Matsushita was making the promotion decision for Barinaga between September 29 and October 30, 2022.[303] ExxonMobil having been served with a lawsuit just weeks prior to Barinaga's promotion denial establishes the causal link between Barinaga's protected activity and the 2022 promotion denial.

**iv. Evidence of a causal link between Barinaga's protected activity and the 2023 Baytown Chemical Plant Site Manager denial.**

In January 2023, four months after ExxonMobil was served with Barinaga's, Barinaga "expressed more than once" in a meeting with Matsushita that she would

---

[299] ROA.347.
[300] *Ayodeji Awe v. Harris Health Sys.*, 2026 U.S. App. LEXIS 733, at *6.
[301] ROA.27.
[302] ROA.519.
[303] *See* Sealed Exh, 27 (beginning ROA.1066 [Dkt.60]).(This is the document provided by HR used by Matsushita in promotion decisions for 2022).

really like to be plant manager.[304] A month later Zamora decided Barinaga's future would be outside of Manufacturing, though no need for her elsewhere was identified.[305] Matsushita and leadership went to great lengths to find a position for Barinaga that would make her unavailable for the Baytown Chemical site manager position, ultimately leading to a denial of that position. [306] Matsushita's and Zamora's knowledge of the lawsuit, the temporal proximity between ExxonMobil's receipt of the lawsuit and the moves to ensure Barinaga could not get her desired assignment, considered with the entirety of the circumstances and the ongoing nature of the process provide the causal link between ExxonMobil's denying Barinaga the Baytown Chemical Plant site manager position and her protected activity.

### D. ExxonMobil's claimed non-retaliatory reasons are pretext.

The burden now shifts to ExxonMobil to show it had a legitimate, non-retaliatory reason for its actions. [307] Further, "where there is a close timing between the employee's protected activity and an adverse employment action, the employer must offer 'a legitimate, non-discriminatory reason that explains both the adverse action and the timing.'" [308]

[304] ROA.689.
[305] ROA.681.
[306] See ROA.666-688.
[307] *Cannon v. Jacobs Field Servs. N. Am*., Inc., 813 F.3d 586, 590 (5th Cir. 2016).
[308] *Shackelford,* 190 F.3d at 408, quoting *Swanson v. General Services Admin*., 110 F.3d 1180, 1188 (5th Cir. 1997).

An employee can show pretext by "showing that a [retaliatory] motive more likely motivated her employer's decision."[309] "Pretext can be proven by any evidence that casts doubt on the credence of the employer's proffered justification for the adverse employment action."[310] Once a retaliation case reaches the pretext stage, "the only question is whether the evidence of retaliation, in its totality, supports an inference of retaliation."[311] A factfinder "may infer pretext where a defendant has provided inconsistent or conflicting explanations for its conduct."[312] "In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a [retaliatory] purpose."[313]

**i. ExxonMobil's purported reasons for the 2020 Baytown Chemical Plant site manager denial are pretext.**

Barinaga was told by Lightfoot and Blommaert that she would be the next Baytown Chemical Plant site manager.[314] Weeks after Barinaga complained to Blommaert about ExxonMobil was handling the recommendations arising from her 2018 complaints, and he told her people were not happy with her as a result of her

---

[309] *Brown v. Wal-Mart Stores East, L*.P., 969 F.3d 571, 577 (5th Cir. 2020).
[310] *Id.* at 578.
[311] *Shackelford* at 407.
[312] *Nasti v. Ciba Specialty Chemicals Corp*., 492 F.3d 589, 594 (5th Cir. 2007).
[313] *Wright v. West*, 5050 U.S. 277 (1992).
[314] ROA.317(220:25-221:11), ROA.319(257:16)-320(258:21), ROA.349, ROA.609, ROA.696, ¶7, ROA.782; Sealed Exh.10, p.4 (beginning ROA.1066 [Dkt.60].)

complaints, Blommaert told Barinaga that she was not getting the site manager role because he needed to develop someone else.[315]

ExxonMobil now claims that Barinaga needed more time as process manager.[316] ExxonMobil's first suggestion that Barinaga was not qualified for the site manager position in 2020 came only after she filed suit. No documents reflect any such concern in 2020. Lightfoot had been process manager at the Baytown Chemical Plant for only a year and three months before she was promoted to site manager.[317] Her CL31 at the time she was assigned as site manager was also a lower seniority than Barinaga's CL32.[318]

In April 2020, Blommaert stated that when Lightfoot moved Barinaga could step in to the role in 2021 and provide stability.[319] Blommaert told the EEOC that his decision to put Blokker in the role was no reflection on Barinaga's ability and he would have no qualms putting Barinaga in the role.[320] Lightfoot thought Barinaga was fully ready.[321] Even Blokker said it would have been logical to place Barinaga in that position in 2021.[322] As of late 2020, Barinaga's individual development plan

---

315 ROA.317(219:24-220:10), *see also* Sealed Exh.10, p.4 (beginning ROA.1066 [Dkt.60].
316 ROA.698, ¶7.
317 ROA.615.
318 *See* ROA.615; ROA.605.
319 ROA.717.
320 ROA.608; ROA.813(166:18-23).
321 ROA.615.
322 ROA.614.

reflected that she "was a candidate for medium to large sites." [323] Nevertheless, after her protected activity just weeks earlier, Barinaga was denied the position.

ExxonMobil's next justification is that Blokker was a better candidate. Again, at the time Blommaert said Blokker was being given the role for Blokker's development.[324] This comports with what Barinaga reported.[325] Blokker was a lower seniority than Barinaga.[326] Barinaga had previously overseen two plants simultaneously.[327] As process manager Barinaga had more direct and indirect reports than Blokker did at his entire plant.[328] Lightfoot, expressed concerns to the EEOC that Blokker was not ready for the role, given the smaller size of the Mont Belvieu plant compared to the Baytown Chemical Plant, and was concerned about his ability to "grow into the role."[329] Again, the only materials from ExxonMobil that support this alleged non-retaliatory reason are affidavits and (scant) deposition testimony after suit was filed. A reasonable factfinder has sufficient reason to deem it unworthy of belief, and, with all of the other evidence and circumstances of Barinaga's claims, find it to be a pretext for discrimination.

---

[323] Sealed Exh.10 , p.2, (beginning ROA.1066 [Dkt.60]).
[324] ROA.608.
[325] *See e.g.* Sealed Exh.10, p.4 (beginning ROA.1066 [Dkt.60]).
[326] ROA.605, see ROA.660.
[327] ROA.481(155:24-8).
[328] See ROA.599, 483(176:21)-484(177:1).
[329] ROA.615-616.

### ii. ExxonMobil's purported reasons for denying Baringa the 2023 Baytown Chemical Plant site manager position are pretext.

ExxonMobil claims Barinaga was not considered for the Baytown Chemical Plant site manager position in 2023 because (1) the move to Major Growth Ventures was best for her development, (2) she lacked the necessary experience for the Baytown Chemical Plant site manager position, (3) there was a shortage of positions in Manufacturing, and (4) the Baytown Chemical Plant site manager position did not become open until after Barinaga had left. The district court accepted, *in toto,* ExxonMobil's justifications, despite ample evidence of pretext for each. [330]

#### (1) ExxonMobil's did not move Barinaga to Major Growth Venture for Barinaga's benefit.

As late as April 28, 2023, ExxonMobil was trying to put Barinaga into the Polaris BVM position, despite her lacking the necessary background. [331] The leadership even expressed concern that if they did not move quickly someone else would be identified for the spot.[332] The last mention of Barinaga for the Polaris BVM position was April 28, 2023.[333] On May 2, the HR representative says that the president is "eager to endorse plan" for Barinaga, without mention of any specific plan.[334] On May 11, the executives are already planning the date for Barinaga's move

[330] *See supra*, III, Sec.K.
[331] ROA.670, 679.
[332] ROA.678.
[333] ROA.670.
[334] ROA.669.

without any position identified.[335]A short seven days later Barinaga is approved for Major Growth Ventures.[336] This contradicts any suggestion that Barinaga was only moved because the perfect position opened up. Rather, it reflects ExxonMobil's desperation to get Barinaga out of Manufacturing.

ExxonMobil contends that it had already decided to move Barinaga to Major Growth Ventures before it was aware that Blokker would need to be replaced.[337] This, too, is contradicted by the evidence because multiple emails indicate the decisions for Barinaga and Blokker were being made in tandem.[338] In an April 13, 2023 email, well before the decision of where Barinaga would be placed had been made, and thus before any plans related to that decision had been made, President Karen McKee had stated that she wanted the decision regarding Blokker's replacement made before the decision regarding Barinaga's replacement was made.[339] In a May 2023 email, Barinaga's placement was identified as being "in parallel" with a redacted discussion, and President McKee was "eager to endorse plan for Barinaga"– despite there being no pending plan.[340] In the same email in which Matsushita notified the Regional Director that Barinaga had been approved for Major Growth Ventures, Matsushita said they needed to start finding Blokker's

[335] ROA.668.
[336] ROA.685.
[337] ROA.520-521, ¶10.
[338] *See e.g.* ROA.666, 686, 687.
[339] ROA. 666.
[340] ROA. 669.

replacement. A factfinder could reasonably conclude that the only decision that each of these reasons are pretext for ExxonMobil's intention to deprive Barinaga of the site manager position in retaliation for her protected activity. [341]

**(2) Barinaga was fully qualified for the Baytown Chemical Plant site manager position.**

No one told Barinaga she lacked necessary experience for the job, or that she needed additional refinery experience.[342] Barinaga had long conversations with the regional director Jason Duncan and Janet Matsushita. Neither of them told Barinaga that her lack of refinery experience was an issue at all for the site manager position.[343] Blokker and Lightfoot lacked refinery experience when placed in the position.[344] In her then-almost thirty years at ExxonMobil, no one had assigned Barinaga to a refinery position. Had they done so she would have welcomed the experience.[345] The discussion of refinery experience as a requirement and "cross-pollination," which the district court accepted as reasons for ExxonMobil's decision,[346] does not show up in any ExxonMobil document from when the decisions were being made. Given the lack of refinery experience of the two prior Baytown Chemical Plant site managers and the absence of anything to show that was a

[341] ROA.686.
[342] ROA.583¶4.
[343] *Id.*
[344] ROA.613, ROA.615, ROA.659.
[345] ROA.584, ¶4.
[346] See ROA.906.

consideration when the 2023 decision was being made, a factfinder could find this alleged reason to be pretext for retaliation.

**(3) ExxonMobil did not move Barinaga due to a shortage of openings in Manufacturing.**

ExxonMobil claimed that because there were fewer roles in Manufacturing it was in Barinaga's best interests to move her out.[347] Matsushita could not name a another person who was considered for a move outside of Manufacturing.[348] Contradicting the argument is the fact that the person moved into the Baytown Chemical Plant site manager position instead of Barinaga was moved from Major Growth Ventures, outside of Manufacturing, *into* Manufacturing to take the role.[349] Additionally, emails from that time period reflect the leadership considering others from outside Global Operations for various roles. [350]

ExxonMobil's argument could be disbelieved by a factfinder because the evidence shows they were moving people into Manufacturing from the outside when Barinaga was right there, ready, willing, and very able to take the site manager position. Not only that, but the person chosen instead was of lower rank, lower performance ratings, and had never appeared on the "chessboard" for the position.[351] A reasonable factfinder could infer that this reason, either alone or as presented in

---

[347] ROA.520, ¶9.
[348] ROA.398(29:14-30:17).
[349] ROA.402(45:23-46:12).
[350] *See* ROA.699.
[351] ROA.605, Sealed Exh.B, ¶36 (beginning ROA.54 [Dkt.41]).

ExxonMobil's shotgun approach, that the reason is not credible, and a pretext for retaliation.

**(4) ExxonMobil knew of the Baytown Chemical Plant site manager position's probable vacancy when it was finding a place for Barinaga.**

The timing of Barinaga's move was driven solely by ExxonMobil's leadership, as opposed to any identified business need.[352] Emails reflect that ExxonMobil was aware at least as early as May 2023 that Blokker's health condition would probably mean an extended absence.[353] This contradicts their claim to have been unaware of the potential opening until after Barinaga had gone to Major Growth Ventures. Even if that were true, ExxonMobil could have simply reassigned Barinaga back to Baytown, as it did with another newly placed site manager in another very similar case.[354] Given the unusual decision to move the top two people from a site at one time, the fact that ExxonMobil was fully in control of who went where, and the evidence that ExxonMobil knew of Blokker's leave earlier than it is admitting, a reasonable factfinder could conclude that ExxonMobil's reason is pretext to for retaliation.

---

[352] See ROA.666-689; *see also* ROA.407(69:2-70:1).
[353] ROA.686.
[354] ROA.500(76:24-77:3).

### C. Pretext Regarding the 2020 - 2022 Promotion Denials.

ExxonMobil's only reason for denying Barinaga promotions for over five years is that she was ahead of pace. There is ample evidence to allow a reasonable factfinder to determine that this purported reason is a pretext for retaliation.

#### i. Barinaga was not "ahead of pace" because there was no "pace."

The first mention of Barinaga being "ahead of pace" by any ExxonMobil employee was in the affidavits presented in support of ExxonMobil's motion for summary judgment. Blommaert stated with regard to promotion timing, "Yeah, but it's not sort of, in my mind, you know, X or Y is too long, too short."[356] The first time he mentioned "pace" was in his affidavit.[357] Matsushita expressly denied that time since last promotion was a major factor in the promotion decision.[358] She stated, "I do not really have a time-bounded factor."[359] Johnston could not even remember considering Barinaga for a promotion at all until his affidavit.[360] Janice Mah, a Human Resources employee, stated in her affidavit that Barinaga was "ahead of pace," but she provided no data or policies to support that justification.[361]

---

[356] *Id.* at (67:3-5).
[357] ROA.469, ¶9.
[358] ROA.400(37:25-38:5).
[359] *Id.* at (38:6-11).
[360] See ROA.376(17:1-14.); ROA.526.
[361] ROA.357, ¶12.

No documents or personnel materials reflect any pace-related policy. Other than the affidavits the only evidence regarding a rate of promotions was Nash's testimony that ExxonMobil tried to get people to their potential by age 55.[362] By that measure Barinaga is far behind. No emails or other communications discussing Barinaga's pace, or anyone's, or otherwise referring to her rate of promotion were ever produced.

A reasonable factfinder could deem this purported reason to be non-credible, and that it was a pretext for retaliatory denial of promotions.

#### ii. ExxonMobil's claim that the time between Barinaga's between promotions was not unusual is false.

The district court accepted ExxonMobil's statement that Barinaga's time without a promotion was not unusual.[363] It also accepted ExxonMobil's assertion that other (unidentified) employees had gone without promotions for as long, ignoring Barinaga's differentiation between her situation and theirs. This required the district court to ignore the evidence that no one else identified by ExxonMobil has gone five years without a promotion despite great distance from her potential CL and no performance issues.[364] Only four others had gone even four years.[365] No ExxonMobil employee could explain why she was denied promotions for so long.

---

[362] ROA.713(20:14-24).
[363] ROA.912-913.
[364] Sealed Exh.26 (beginning ROA.1066 [Dkt.60]).
[365] *Id.*

A factfinder could find this justification non-credible, and find it is a pretext to cover up retaliation.

**ISSUE NO. 2**

**The district court erred in determining that Barinaga's claims of retaliatory denial of promotion before November 5, 2022, were untimely.**

The district court analyzed the timeliness of Barinaga's Title VII and TCHRA claims based on their relation to filing dates of EEOC charges of discrimination.[366] It determined that Barinaga's claims of retaliation for denial of the Baytown Chemical Plant site manager position in 2020 and 2023 were timely, as were the promotion decisions after November 22, 2022.[367] The only claims relevant to this appeal that the district court deemed untimely are promotion denials between June 6, 2020, and November 21, 2022. The district court erred in that determination, and those claims are also timely.

The district court stated that Barinaga "complains of missed promotions or CL increases dating back to 2018."[368] In fact, Barinaga only complained, and complains, of promotion denials beginning in 2020, when she had gone more than two years without a promotion despite very high reviews.[369] Complaints of

[366] ROA.891-894.
[367] ROA.894-895.
[368] ROA.898.
[369] ROA.605.

retaliatory promotion denials were properly raised in the 2021 and 2023 EEOC filings.[370] Under the *Gupta* exception, Barinaga was not required to file subsequent charges on the retaliatory acts growing from that 2021 filing.[371]

The federal regulations state that "a charge is sufficient when the Commission receives from the person making the charge a written statements sufficiently precise to identify the parties, and to describe generally the action or practices complained of."[372] The courts "interpret what is properly embraced in a review of a Title VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which can be reasonably expected to grow out of the charge."[373] The courts "engage in a fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label."[374]

Barinaga's April 2, 2021, charge of discrimination identified the parties and included a recitation of facts sufficient to put the employer and the Commission on notice of her claims and trigger an investigation.[375] Barinaga complained of "career regression" and associated negative effects on her pay.[376]

---

[370] ROA.347-349, ROA.351-353.
[371] *Gupta v. East Texas State University,* 654 F.2d 411, 413-414 (5th Cir. 1981).
[372] 29 C.F.R. §1601.12(b).
[373] *Briceno-Belmontes v. Coastal Bend College*, 2022 U.S. Dist. LEXIS 5499 at *13 (S.D. Tex. 2022), quoting *Jennings v. Towers Watson,* 11 F.4th 335, 342 (5th Cir. 2021).
[374] *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006).
[375] ROA.347-349.
[376] ROA.379.

The proper question is whether the charge has sufficient facts to trigger an EEOC investigation, and to put an employer on notice of the existence and nature of the charges against it.[378] In correspondence to the EEOC in response to Barinaga's 2023 EEOC filing, ExxonMobil acknowledged that not only was it put on notice of the denial of promotion claims beginning with the April 2021 complaint, the EEOC was as well, since it actually did investigate. ExxonMobil stated:

> [Referencing Charge No. 460-2021-02363][379] The Commission has already investigated Charging Party's allegations regarding […] her belief that she has been denied promotions and pay raises[.]…The Commission already reviewed those allegations, and during an April 29, 2022 Fact Finding Conference the Commission conducted extensive witness interviews with ExxonMobil executives on those issues."[380]

"Before seeking relief in federal court, Title VII plaintiffs must exhaust their administrative remedies."[381] In Texas, an employee has three hundred days from learning of the adverse employment action to file a claim with the EEOC.[382] Three hundred days prior to the April 2, 2021, is June 6, 2020. [383] Since Barinaga complained of promotion denial in her initial April 2, 2021, complaint, her

[378] *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 878 (5th Cir. 2003).
[379] *See* ROA.347-349.
[380] ROA.208.
[381] *Stroy v. Gibson ex rel. Dep't of Veteran Affs*., 896 F.3d 693, 698 (5th Cir. 2018).
[382] 42 U.S.C. §2000e-5(e)(1).
[383] The district court erroneously calculated based on a filing date of April 1, 2021, rather than the actual filing date of April 2, 2021. *See* ROA.22.

complaints of retaliatory denial of promotions from June 6, 2020, through that filing are timely.

The subsequent retaliation claims, beginning with the 2021 promotion denial and continuing through 2023, all grew from the 2021 filing.[384] The *Gupta* exception established by this Court states:

> [I]t is unnecessary for a plaintiff to exhaust remedies prior to urging a retaliation claim growing out of an earlier charge; the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court.[385]

Barinaga did raise retaliation claims in her 2023 charge of discrimination, but it was not required.[386] Because her 2021 and 2023 promotion denial arose from the facts giving rise to her 2021 complaint, and the filing of the 2021 complaint itself, Barinaga was not required to exhaust administrative remedies for those subsequent retaliation claims.[387] Those claims were timely and were properly before the district court.

## CONCLUSION

Barinaga provided sufficient evidence to establish her prima facie retaliation claim and she provided sufficient evidence that ExxonMobil's many and shifting purported legitimate non-discriminatory reasons were pretext to hide its retaliation.

---

[384] ROA.351-353.
[385] *Gupta v. East Texas State University*, 654 F.2d 411,413-414 (5th Cir. 1981).
[386] *See* ROA.352-353.
[387] *Gupta at* 413-414.

This Court, therefore, should reverse the district court's grant of summary judgment It should remand Barinaga's retaliation claims for trial.

Respectfully submitted,

By: */s/ Jakki A. Hansen*
Jakki A. Hansen
THE HANSEN LAW FIRM, P.C.
State Bar No. 24000886
10190 Katy Freeway, Suite 440
Houston, Texas 77043
Telephone: 281.888.4364
Facsimile: 888.492.9819
*jhansen@hansenlawfirmpc.com*
COUNSEL FOR
PLAINTIFF-APPELLANT
ZOE MILAN BARINAGA

**CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Civil Procedure 25(d)(1)(B), I certify that a true and correct copy of this document was served on all counsel of record through this Court's ECF system on February 2, 2026:

Reagan Brown
*Regan.brown@nortonrosefulbright.com*
Shauna Johnson Clarke
*Shauna.clark@nortonrosefulbright.com*
Heather Lynn Sherrod
*Heather.sherrod@nortonrosefulbright.com*
NORTON ROSE FULBRIGHT US LLP

1550 Lamar, Ste 2000
Houston, Texas 77010

COUNSEL FOR APPELLEE
EXXONMOBIL CORPORATION

*/s/ Jakki A. Hansen*
Jakki A. Hansen

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limits of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 12,999 words, excluding the portions of the brief exempted from inclusion under Fed. R. App. P. 32(a)(7)(B)(iii.)

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in proportionately spaced typeface using Microsoft Word 365 in Times New Roman, 14 pt. font.

*/s/ Jakki A. Hansen*
Jakki A. Hansen